## STATE EX REL. HANS OLSEN v. COUNTY OF ST. LOUIS AND OTHERS.[1]

May 4, 1951.

No. 35,329.

---

[1]Reported in 47 N. W. (2d) 776.

 

*Thomas J. Naylor,* County Attorney, and *John T. Naughtin,* Assistant County Attorney, for appellants (respondents below).

*C. G. Anderson,* for respondent (relator below).

MAGNEY, JUSTICE.

Mandamus against the county of St. Louis and its county commissioners to compel relator's reinstatement to a position he held with the county of St. Louis. The writ was issued, and respondents appeal.

Hans Olsen, relator, is an honorably discharged veteran of World War I. He lives at Zim about 30 miles south of Hibbing. On October 22, 1941, the board of county commissioners of St. Louis county adopted a resolution which provides that, whereas Hans Olsen and another have made applications under the veterans preference act for employment in the seventh commissioner district, they be "employed as laborers in their respective areas, effective November 1, 1941, for a period not to exceed five (5) days per month each, when work and funds are available."

In 1941, pursuant to this employment as laborer, Olsen earned $115.88; in 1942, $320.63; in 1943, $375.50; in 1944, $376.37; and in 1945, $145.83. In 1946 he earned $73.88. The 1946 work was performed in January. In 1948, he was employed three days in March and one day in April. From January 1946 to March 1948, he was not employed by the county as a common laborer.

Olsen petitioned the court for an alternative writ of mandamus for reinstatement, basing his petition on the ground that the county and its commissioners, although having full knowledge that he had a soldier's preference rights, on January 19, 1946, deprived him of his right to work thereafter five days each month and appointed other persons who were not honorably discharged veterans of any war to work in his position of employment. He also demanded payment of wages, which he claimed he had been deprived from earning.

As a defense, respondents alleged that Olsen was given every opportunity to work for the county whenever there was work in the Zim area; that at times he was offered work in that area and either refused it or sent his son in his place. As a further defense, respondents alleged that Olsen was guilty of laches in failing to assert his rights, if any, which he might have as an honorably discharged veteran.

Respondents did not plead as a defense that Olsen was a civil service employe and that the veterans preference act, on which he is predicating this action, no longer operates in the county. Although this defense was not pleaded, the matter was litigated, and the court found that the St. Louis county civil service act (L. 1941, c. 423) had no application. It held that relator was entitled to a writ of mandamus directing and commanding respondents to restore Olsen to his former position, and awarded him $1,123.68 as damages.

Pursuant to authorization given St. Louis county by L. 1941, c. 423, the electors of St. Louis county adopted civil service. It went into effect on November 3, 1942. Common laborers like Olsen, who were working for the county five days a month at the time civil service was adopted, were considered by the civil service commission as regular employes and classified as Utility Man I. Olsen's name was carried on the roster cards in the office of the commission.

Under the rules adopted by the civil service commission of the county, a civil service employe who is off the payroll for more than one year is dropped from the rolls. When Olsen had been off the payroll for a year in 1947, he was dropped and no longer carried on the rolls as a regular employe with any status. Whatever work he did thereafter was as a temporary employe. The one-year time provided for in the rules can be extended for two years if application for an extension is made by the employe. Olsen made no application for an extension and filed no protest until suit was started.

It must be evident that if Olsen was a civil service employe he must proceed under civil service rules and procedure in order to

be reinstated, and not by mandamus against the county and its commissioners under the veterans preference act. He has made no application to the civil service commission for reinstatement.

L. 1941, c. 423, § 6, provides that the unclassified service shall include all common labor temporarily employed, and that the classified, with certain specified exceptions not here important, shall include all other positions now existing and hereafter created in the service of the county. Olsen was not temporarily employed on an hourly basis. He had a permanent five-day-a-month position and therefore qualified for a position in the classified service.

Olsen, however, claims that he was never notified that he had become a civil service employe; therefore, even if the civil service commission had placed his name on the classified list, that he did not become a civil service employe. He bases his contention on L. 1941, c. 423, § 9, which reads:

"The civil service director shall, as soon as practicable after the adoption of the classification plan, and after consultation with appointing authorities, allocate each position to its proper class. Any employee whose position or title is affected by such allocation shall be notified thereof and may appeal his allocation to the county civil service commission within 30 days of such notice, and after hearing such employee the civil service commission shall approve or modify such allocation."

Olsen's position or title was not affected by the allocation of position. From the time civil service was inaugurated by the county in the latter part of 1942 until January 1946, his job and position remained the same as it had been prior to the date civil service became effective. There is nothing which the civil service commission did in its classification that affected Olsen's position or job; therefore, there was nothing to notify him about.

The controlling statute provides, as stated, that the classified service shall include all other positions now existing and hereafter created in the service of the county, with the exception of common labor temporarily employed and a few others specifically men-

tioned. Olsen and his position did not come within the exceptions. The law, when it was put into effect, brought Olsen into the civil service setup; he was given a permanent five-day-a-month position on the civil service rolls; he worked under that arrangement until January 1946; he failed to work for over a year; and under the rules of the commission he was dropped.

L. 1941, c. 423, § 25, provides that veterans have the same preferential rating that was accorded state employes under L. 1939, c. 441, § 31 (M. S. A. 43.30), which chapter created the department of civil service for the state. After the adoption by the county of civil service as to county employes, there was nothing left for the veterans preference act to operate on. Olsen under civil service had job security similar to that he would have had under the veterans preference act.

With reference to the application of the veterans preference act to employes of the state, we said in State ex rel. Butters v. Railroad and Warehouse Comm. 209 Minn. 530, 534, 296 N. W. 906, 908:

"* * * Relator's rights under the veterans preference law are gone. He was deprived of them by the civil service law."

The legislation involved in the Butters case differs from that in the instant case, but we see no rights which Olsen had under the veterans preference act previous to the adoption of civil service by the county that survive to him or which give him any remedy under the facts of this case. See, also, State ex rel. Kane v. Stassen, 208 Minn. 523, 294 N. W. 647.

In our opinion, it is obvious that Olsen was a civil service employe when his name last appeared on the payroll as a permanent employe. Since he performed no service for the county for over a year following January 1946, he was dropped from the rolls. He made no protest and no application to the civil service commission for an extension of the one-year period, nor did he make an application for reinstatement under civil service rules and regulations. His rights under the civil service law are gone. His rights under the veterans preference act are also gone, and no relief can be granted him in this mandamus action.

Since the above disposes of the action, we need not consider the other questions raised in defense.

Order reversed.